# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

Sisters of Charity of
Leavenworth Health System, Inc.,

      Plaintiff,

v.                                                    Case No. 13-2364-JWL

Prime Healthcare Services, Inc.;
Prime Healthcare Services—Saint John
Leavenworth, LLC; and Prime Healthcare
Services—Providence, LLC,

      Defendants.

## MEMORANDUM & ORDER

This lawsuit arises out of a contractual dispute between plaintiff Sisters of Charity of Leavenworth Health System, Inc. ("Sisters of Charity") and defendant Prime Healthcare Services, Inc. ("Prime"). Sisters of Charity and Prime entered into an Asset Purchase Agreement whereby Prime agreed to purchase two hospitals owned by Sisters of Charity—St. John Hospital, Inc. and Providence Medical Center, Inc. Subsequent to that agreement, Sisters of Charity and Prime entered into a Transition Services Agreement requiring Sisters of Charity to provide certain services to Prime to assist in the transition of ownership and operations of St. John Hospital and Providence Hospital. The hospitals are operated by two subsidiaries of Prime, defendant Prime Healthcare Services—Saint John Leavenworth, LLC and defendant Prime Healthcare Services—Providence, LLC (the "Prime Hospital" defendants).

After certain disputes arose concerning the parties' rights and obligations under the Transition Services Agreement, Sisters of Charity filed a petition in state court against

defendants alleging breach of contract against defendant Prime and seeking a declaratory judgment regarding Sisters of Charity's rights and obligations under its contracts with Prime. In its petition, Sisters of Charity further alleges that the Prime Hospital defendants are necessary and indispensable parties because the declaratory judgment sought by Sisters of Charity could affect the operations of the hospitals operated by the Prime Hospital defendants.

Defendants timely removed the case to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. In their removal papers, defendants contend that the Prime Hospital defendants should be ignored as parties in this case because they have been fraudulently joined for purposes of defeating diversity jurisdiction and that Prime, as the only properly joined defendant, is undisputedly diverse in citizenship from Sisters of Charity.[1] Shortly after removal, defendants filed a motion to dismiss or, in the alternative, for summary judgment on plaintiff's petition and, in response to Sisters of Charity's subsequently filed amended petition, filed a motion to dismiss or for summary judgment on the amended petition. Sisters of Charity, in turn, has filed a motion to remand this case to state court for lack of federal subject matter jurisdiction. In support of their motion to remand, Sisters of Charity asserts that it was required to join the Prime Hospital defendants because those defendants are solely responsible for operating the hospitals such that they have obligations and interests which will be affected by an adjudication of the claims asserted in the petition. Sisters of Charity also requests that the court order defendants to pay the reasonable attorneys' fees and costs incurred by Sisters of Charity as a result of defendants' removal.

---

[1] Defendant Prime is a citizen of Delaware and California and Sisters of Charity is a citizen of Kansas and Colorado. The Prime Hospital defendants, like Sisters of Charity, are citizens of Kansas.

The court, then, is confronted with two motions—one to dismiss or for summary judgment on the merits and one to remand the case to state court.[2] In such circumstances, the Tenth Circuit has cautioned that the better practice is rule first on the motion to remand and, if granted, to send the motion to dismiss back to the state court. *In re Bear River Drainage District*, 267 F.2d 849, 851 (10th Cir. 1959); *accord* 14C The Late Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3739 at 752-58 (4th ed. 2009). Thus, the court addresses Sisters of Charity's motion to remand first and, because the court concludes that remand is required, it declines to address defendants' motion to dismiss or for summary judgment on the amended petition. The court denies Sisters of Charity's request for reasonable attorneys' fees and costs incurred as a result of defendants' removal as defendants presented colorable arguments in support of removal. *See Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1146 (10th Cir. 2004) (fees incurred as a result of removal may be denied where the defendant had a "fair basis" for removing the case).

**Background**

The following facts are taken from Sisters of Charity's original petition and are assumed true for purposes of the motion to remand. In January 2013, Prime and Sisters of Charity entered into an Asset Purchase Agreement whereby Prime agreed to purchase two hospitals owned by Sisters of Charity—St. John Hospital, Inc. and Providence Medical Center, Inc. On

---

[2] The first-filed motion to dismiss plaintiff's petition is rendered moot by the filing of plaintiff's amended petition and the subsequent motion to dismiss the amended petition. Defendants have also filed a motion for oral argument concerning both the motion to dismiss and the motion for remand. That motion is denied as the court believes that argument would not clarify any issues in the parties' submissions or assist the court in any meaningful way.

3

April 1, 2013, Prime and Sisters of Charity entered into a Transition Services Agreement (TSA) requiring Sisters of Charity to provide certain services to Prime[3] to assist in the transition of ownership and operations of St. John Hospital and Providence Hospital, which are operated by the Prime Hospital defendants. The Prime Hospital defendants are subsidiaries of Prime. As alleged in the petition, Sisters of Charity, under the terms of the TSA, was required to manage end-to-end billing activities for patients from April 2013 through March 2014. Sisters of Charity alleges that it fulfilled its obligations but that Prime breached the terms of the TSA by failing to pay Sisters of Charity monthly fees owed to Sisters of Charity for providing the services associated with patient billing. According to Sisters of Charity, its billing services under the TSA are performed to assist in the transition of critical healthcare services at St. John and Providence Hospitals such that the Prime Hospital defendants are necessary and indispensable parties to this lawsuit.

The parties also dispute the nature and extent of Prime's rights to certain intellectual property and proprietary expertise regarding patient care and financial information. As alleged in the petition, the Asset Purchase Agreement expressly excluded from the assets transferred to Prime any intellectual property rights belonging to Sisters of Charity. The TSA provides that Prime has no right to Sisters of Charity's proprietary expertise and intellectual property beyond the limited rights expressly provided by Sisters of Charity. Sisters of Charity alleges that,

---

[3] Sisters of Charity alleges in its petition that the TSA requires it to provide certain services to the Prime Hospital defendants as well. But the plain language of the TSA requires Sisters of Charity to provide services only to the "Purchaser," which is limited to Prime Healthcare Services, Inc. The parties do not dispute that the court may consider the Asset Purchase Agreement and the TSA as those documents are referenced in Sisters of Charity's petition and are central to the claims in the petition.

despite the terms of the Asset Purchase Agreement and the TSA, Prime and the Prime Hospital defendants have claimed entitlement to possession, use or ownership of Sisters of Charity's intellectual property regarding patient care and financial information. According to Sisters of Charity in its petition, the Prime Hospital defendants are necessary and indispensable parties regarding the dispute over Sisters of Charity intellectual property because the intellectual property is directly tied to the operation of St. John and Providence Hospitals.

In its three-count petition, Sisters of Charity asserts a breach of contract claim against Prime based on Prime's failure to pay monthly service fees to Sisters of Charity as required by the TSA; seeks a declaratory judgment that Prime has materially breached the TSA, that Sisters of Charity has fulfilled its obligations under the TSA and that Prime is obligated to pay Sisters of Charity for the provision of its billing services; and seeks a declaratory judgment that the Prime defendants have no right to use, access, possess or own any of Sisters of Charity's proprietary expertise and intellectual property except as expressly limited by Sisters of Charity in the TSA.

**Standards**

Federal removal jurisdiction is statutory in nature and is to be strictly construed. *See Shamrock Oil & Gas v. Sheets*, 313 U.S. 100, 108-09 (1941). Because federal courts are courts of limited jurisdiction, there is "a presumption against removal jurisdiction," and doubtful cases must be resolved in favor of remand. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.1995). As the party seeking to invoke diversity jurisdiction, Prime must establish the existence of diversity at the time of removal. *Id*. There is no dispute that the amount in

5

controversy exceeds the jurisdictional threshold; the dispute here centers on whether complete diversity of citizenship exists. *See* 28 U.S.C. § 1332.

Prime contends that that the Prime Hospital defendants should be ignored for purposes of assessing complete diversity because they have been fraudulently joined. To establish fraudulent joinder, Prime must demonstrate either "actual fraud in the pleading of jurisdictional facts" or the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013). Prime bears a "heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* In evaluating the propriety of Prime's removal in the context of a claim of fraudulent joinder, the court must determine the basis of joinder by "any means available" and may "pierce the pleadings" to "consider the entire record." *Nerad v. AstraZeneca Pharm., Inc.*, 203 F.ed. Appx. 911, 913 (10th Cir. Oct. 11, 2006) (explaining that court normally evaluates propriety of removal by determining whether allegations on the face of the petition satisfy jurisdictional requirements, but in case of alleged fraudulent joinder, court may pierce pleadings) (quoting *Dodd v. Fawcett Pub., Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

Prime does not allege fraud in the recitation of jurisdictional facts. Accordingly, Prime must prove its allegation of fraudulent joinder by demonstrating that there is no possibility that plaintiff would be able to establish a cause of action against the Prime Hospital defendants in state court. Thus, the court must decide whether there is a reasonable basis to believe Sisters of Charity might succeed in at least one claim against the Prime Hospitals defendants; the claim "need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." *Id.*

6

**Discussion**

In its motion to remand, Sisters of Charity contends that the Prime defendants have failed to satisfy their burden of demonstrating that there is no possibility that Sisters of Charity would be able to establish a claim against the Prime Hospital defendants. According to Sisters of Charity, the Prime Hospital defendants, at a minimum, are proper defendants on Count III which seeks declaratory relief concerning Prime's possession, use and ownership of certain intellectual property. As argued by Sisters of Charity, that intellectual property is directly tied to services provided at the hospitals operated by the Prime Hospital defendants such that the Prime Hospital defendants have an interest in and are undoubtedly affected by the declaration sought. These allegations are supported by the petition itself in which Sisters of Charity specifically alleges that the sole purpose of the TSA was to "assist in the transition of ownership and operations of St. John and Providence Hospitals;" that the parties' dispute concerns "defendants' rights—or lack thereof— . . . defined by certain agreements between [Sisters of Charity] and Prime"; that all defendants have claimed entitled to the intellectual property; and that the intellectual property is tied to the provision of services at the hospitals."

In the context of a declaratory judgment action, the court modifies the traditional application of the fraudulent joinder doctrine by asking whether the plaintiff, here Sisters of Charity, would be a proper party to a suit brought by the Prime Hospital defendants in the underlying cause of action. *Sycamore Family LLC v. Earthgrains Baking Cos.*, 2013 WL 5883868, at *3 (D. Utah Nov. 1, 2013) (citing *Kansas State Univ. v. Prince*, 673 F. Supp. 2d 1287, 1294 (D. Kan. 2009) (citing *Collin County, Texas v. Homeowners Ass'n for Values*

*Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990))). Because Sisters of Charity seeks a declaration of rights under the TSA, the court's inquiry is whether Sisters of Charity could have been sued by the Prime Hospital defendants in a breach of contract action to enforce the terms of the TSA.

Sisters of Charity acknowledges that the Prime Hospital defendants are not parties to the TSA, but argues that the Prime Hospital defendants are directly affected by the terms of that agreement. Despite the fact that Sisters of Charity and the Prime Hospital defendants lack contractual privity, "Kansas law allows a qualified third-party beneficiary plaintiff to enforce a contract expressly made for his or her benefit even though he or she was not a party to the transaction." *Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego, Kansas*, ___Fed. Appx. ___, 2013 WL 4046559, at *6 (10th Cir. Aug. 12, 2013). "A beneficiary may sue to enforce a contract only if he is an intended beneficiary, i.e., one who the contracting parties intended should receive a direct benefit from the contract." *Id*. As further summarized by the Tenth Circuit:

> In determining whether a particular person is an intended beneficiary of a contract, the court applies the general rules for construction of contracts.
>
> It is not necessary for the third party to be the exclusive beneficiary of the contract; it may benefit the contracting parties as well. Nor is it necessary for the third party beneficiary to be personally named in the contract. It will suffice if he is a member of a designated class or otherwise identifiable as a person intended by the parties' language to benefit from the contract. Before the issue is reached of whether a third party may directly enforce a contract from which he would benefit, the third party must show the existence of some provision in the contract that operates to his benefit.

*Id*. at *6-7 (citations and quotations omitted) (applying Kansas law). As alleged by Sisters of Charity in its petition, and as expressed in the TSA itself, the purpose of the TSA is to "provide

8

for certain transition services to assist in the transition of ownership and continuity of the Purchased Operations."[4] The "Purchased Operations" include the hospitals operated by the Prime Hospital defendants. The services provided by Sisters of Charity under the terms of the TSA clearly benefit the Prime Hospital defendants as the operators of the hospitals. It is plausible, then, that the Prime Hospital defendants could enforce the terms of the TSA against Sisters of Charity as third-party beneficiaries. *See id.*[5]

Defendants suggest that the court should not consider the third-party beneficiary theory because Sisters of Charity has not alleged in its petition that the Prime Hospital defendants are third-party beneficiaries under the TSA. Sisters of Charity's failure to allege the Prime Hospital defendants' status as potential third-party beneficiaries is not surprising as that allegation is immaterial to Sisters of Charity's breach of contract and declaratory judgment actions. As correctly noted by defendants, Sisters of Charity could not hold the Prime Hospital defendants liable for breach of contract on a third-party beneficiary theory. And the Prime Hospital defendants' status as potential third-party beneficiaries has no bearing on Sisters of Charity's declaratory judgment claims against Prime. It is only defendants' fraudulent joinder theory, made in the context of a declaratory judgment action, that renders the third-party beneficiary

---

[4] While the Asset Purchase Agreement states that "[n]one of the provisions contained in this Agreement are intended by the Parties, nor shall they be deemed, to confer any benefit on any person not a party to this Agreement," the TSA contains no such provision.
[5] The court rejects, then, Prime's argument that the Prime Hospital defendants are not "real parties in interest" to this action. *See* Fed. R. Civ. P. 17(a) adv. comm. notes ("The enumeration states that the promisee in a contract for the benefit of a third party may sue as a real party in interest; it does not say, because it is obvious, that the third-party beneficiary may sue (when applicable law give him that right.)." For the same reason, the court is not persuaded by the cases concerning real parties in interest relied upon by Prime as those cases do not involve third-party beneficiaries.

9

analysis pertinent, because the court is then required to determine whether the Prime Hospitals defendants could properly sue Sisters of Charity in state court on the underlying contract claim. Finally, defendants contend that the absence of the Prime Hospital defendants from this action is not prejudicial to Sisters of Charity because any and all relief can be fully obtained from Prime. This, again, misconstrues the relevant inquiry before the court, which is limited to whether Sisters of Charity has fraudulently joined the Prime Hospital defendants.

Because it is possible that the Prime Hospital defendants could assert a claim as third-party beneficiaries against Sisters of Charity under state law, whether or not they would prevail on it, defendants have not proved that the Prime Hospital defendants were fraudulently joined. *See Dutcher v. Matheson*, 733 F.3d 980, 989 (10th Cir. 2013). The court is left, then, with the presence of non-diverse parties and diversity jurisdiction has not been established. *See id*. Remand is required.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion to remand (doc. 11) is granted; defendants' motion to dismiss for failure to state a claim or, in the alternative, for summary judgment (doc. #5) is moot; defendants' motion to dismiss plaintiff's amended petition or, in the alternative, for summary judgment (doc. #8) remains pending for resolution by the state court; and defendants' motion for oral argument (doc. 17) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** this case is remanded to the District Court of Leavenworth County, Kansas.

**IT IS SO ORDERED.**


Dated this 9th day of January, 2014, at Kansas City, Kansas.


                                            s/ John W. Lungstrum
                                            John W. Lungstrum
                                            United States District Judge